IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Case No. 19-cv-03237-PAB-MEH

DAMON KELLEY,

     Plaintiff,

v.

UNISYS CORPORATION, a Delaware Corporation,

     Defendant.

---

**ORDER**

---

This matter comes before the Court on Defendant's Motion for Summary Judgement [Docket No. 59], filed on July 9, 2020. Plaintiff filed a response [Docket No. 70] on August 17, 2020, and defendant filed a reply on August 31, 2020. Docket No. 72. On October 9, 2020, plaintiff filed Plaintiff's Motion to Supplement His Opposition to Defendant's Motion for Summary Judgment and Supplemental Responses. Docket No. 73. Defendant filed a response on October 30, 2020. Docket No. 81.

Plaintiff Damon Kelley filed this action on November 15, 2019, Docket No. 1, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for misclassifying plaintiff as an employee exempt from overtime and failing to pay him overtime. Docket No. 48 at 1. Defendant filed the instant motion for summary judgment, arguing that plaintiff's FLSA claim fails because plaintiff is subject to the executive and administrative exemptions to the overtime requirement. Docket No. 59 at 2. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

1

I. **BACKGROUND**[1]

Unisys's principal business is to provide IT service, software, and technology to its customers.  Docket No. 59 at 3, ¶ 1.  Plaintiff started working for Unisys in 2001 as a Field Engineer ("FE"), which is a non-exempt position.  *Id.*, ¶ 2.  FEs perform activities in the field associated with installing, diagnosing, maintaining, and servicing computer-related products for Unisys clients.[2]  *Id.*  Plaintiff was promoted to client service manager ("CSM") by Unisys in December 2012, and worked as a CSM until his termination on March 28, 2019.[3]  *Id.* at 4, ¶ 4.  Plaintiff knew that his salary would be his full compensation and that he was not entitled to overtime pay when he accepted the CSM position.[4]  *Id.*, ¶ 5.  Plaintiff was in the United States and Canada Field Services

---

[1] The following facts are undisputed unless otherwise indicated.  In plaintiff's response to defendant's motion for summary judgment, plaintiff asks the Court, in the alternative, to defer ruling on the motion for summary judgment until plaintiff has had the opportunity to depose a Unisys corporate representative under Rule 30(b)(6).  Docket No. 70 at 20.  The deposition has now been completed and plaintiff filed a motion to supplement his response to the motion for summary judgment based on the deposition testimony of Ken Mescher.  Docket No. 73 at 1.  Defendant filed a response opposing plaintiff's motion to supplement.  Docket No. 81.  In order to consider the facts in the light most favorable to plaintiff, the Court will grant plaintiff's motion to supplement.

[2] Plaintiff argues that client service managers ("CSMs") also performed those activities.  Docket No. 70 at 3-4, ¶ 2.  Plaintiff's supplemental response contains additional statements on the escalation of service calls from FEs to CSMs.  Docket No. 73 at 3, ¶ 2.  However, the information cited does not contradict that FEs perform work in the field "associated with installing, diagnosing, maintaining and servicing computer-related products for Unisys' clients," and this statement is therefore undisputed.

[3] Plaintiff agrees that he "received what Unisys called a 'promotion' to CSM," but states that the "promotion" did not result in a major change in the nature of his employment.  Docket No. 70 at 4, ¶ 4.

[4] Plaintiff states that, while he knew this information when he accepted the CSM position, he was unaware that he would remain an exempt employee and be subject to an unsustainable number of work hours without additional compensation.  Docket No. 70 at 5, ¶ 5.  Plaintiff's supplemental response contains additional information on

Organization, had a direct supervisor who was a regional manager, and had second-level supervision by the Director of United States and Canada Field Services.  *Id.*, ¶ 6. Plaintiff had an assigned geographic area for which he was responsible.  *Id.*, ¶ 7.

Plaintiff's job description stated that he was responsible for "the overall development/growth, implementation and operational effectiveness regarding service delivery issues and requirements" in his territory.  *Id.*, ¶ 8.  As a CSM, plaintiff worked full-time from home in Colorado; he was not authorized to perform work in the field.  *Id.*, ¶ 9.  Work in the field is handled exclusively by FEs.  *Id.*

A service delivery coordinator assigned service tickets to the FEs on any given day.  *Id.* at 6, ¶ 15.  Within his territory, plaintiff was responsible for handling and resolving all "escalations."  *Id.*, ¶ 16.  An escalation is an issue that arises when an FE conducts a service call, such as an unsatisfied customer or a missed service level agreement ("SLA").[5]  *Id.*  Plaintiff spent an average of one hour, a few times a month, on

---

plaintiff's hours but does not raise any dispute about whether plaintiff knew that he was ineligible for overtime when he accepted the CSM position.  Docket No. 73 at 6-8, ¶ 5.

[5] Defendant cites plaintiff's deposition testimony to support this definition of escalation. Docket No. 59 at 6, ¶ 16.  In the cited testimony, plaintiff states that the service delivery coordinator would escalate to plaintiff if the FE was not responding or giving a positive indication that the FE would make it to an SLA on time.  Docket No. 59-2 at 32-33, 67:11-68:21.  When the call was escalated to him, plaintiff would "start contacting my technicians."  *Id.* at 33, 68:12.  Plaintiff defined escalations as "[u]nsatisfied customer, missed SLA on a same business day contract.  Project manager for a . . . ."  *Id.* at 35, 22-25.  The remainder of plaintiff's answer is cut from the testimony provided to the Court.  In describing his role in escalations, plaintiff stated "[m]ost of the time it was my responsibility to resolve it at the best of my ability.  Sometimes it was just dissatisfaction. . . .  And a different technician or a good working part would solve the – as long as their equipment was fixed ultimately, the escalation resolved itself by having a qualified technician or a working part."  *Id.* at 36, 76:1-10.  This testimony supports the fact that an escalation occurs as a result of a missed SLA or an unsatisfied customer.

service calls escalated to him that he could fix over the phone.[6]  *Id.* at 4, ¶ 9.

Additionally, one to two times per year on a big account, plaintiff would sit on an hours-

long after-hours conference call in order to be a management presence while an FE

was handling a significant service call.  *Id.*

Plaintiff's annual salary between November 2016 and March 2019 was between

$73,451 and $80,128.  *Id.* at 5, ¶ 10.  Plaintiff summarized his job duties in his resume

and LinkedIn profile as follows: "Managed and developed hundreds of field service

technicians across the country who repair high-availability data and storage equipment,

IT retail operations, printers, wireless signals and devices; end user platforms, desktop

support accounts, banking equipment, and electromechanical machines."[7]  *Id.*, ¶ 11.  As

---

[6] Plaintiff argues that his deposition testimony disputes this fact.  Docket No. 70 at 6-7, ¶ 9.  At his deposition, plaintiff testified that, with Unisys's 24-hour operation schedule, "you just got used to always being in front of that computer" and that "you're expected to answer your phone when it rings."  *Id.*  However, plaintiff's response to this fact does not dispute defendant's statement that he only spent a few hours a month fixing issues over the phone.  Plaintiff's supplemental response states that defendant's Rule 30(b)(6) witness, Ken Mescher, contradicts this fact in his deposition and cites four Mescher deposition excerpts in support.  Docket No. 73 at 11, ¶ 9.  Docket No. 73-1 at 9, 40:1-6 states that, if a customer was not happy with an FE's work, the customer would "go up through their management or the account team.  And then that would get fed back through us."  Docket No. 73-1 at 28, 98:7-10 states that plaintiff worked 76.9 hours a week on average.  Docket No. 73-1 at 36, 133:9-10 states that CSMs "would handle client, slash, account escalations."  Docket No. 73-1 at 37, 141:10-22 describes how a client would escalate an issue to a CSM.  Mr. Mescher stated that he did not know if plaintiff had any clients with Unisys mainframes who would follow this particular procedure for escalations.  *Id.*  None of these deposition excerpts raises a genuine dispute that plaintiff spent only a few hours a month on service calls that he could fix over the phone.

[7] Plaintiff's response states that his resume and LinkedIn profile "speak for themselves." Docket No. 70 at 7, ¶¶ 11-12.  Under the Practice Standards of this Court, a party opposing a motion for summary judgment shall "admit or deny the asserted material facts set forth by the movant. . . . Any denial shall be accompanied by a brief factual explanation of the reason(s) for the denial and a specific reference to material in the record supporting the denial."  Practice Standards (Civil cases), Judge Philip A.

a CSM, plaintiff supervised between 20-42 FEs.[8]  *Id.* at 6, ¶ 13.  FEs came to plaintiff

with their grievances and complaints, and he handled them or directed them to the

appropriate resource.  *Id.*, ¶ 17.  Plaintiff discussed scheduling matters and current

challenges, and relayed corporate and departmental communications to FEs.[9]  *Id.*, ¶ 18.

When plaintiff became a CSM, he was given additional access to Unisys's time and

expense reporting system and the employee self-service website.  *Id.* at 7, ¶ 19.

Plaintiff testified that as a CSM, his job responsibilities included performance

management of the FEs in his territory to ensure SLAs were met, participating in hiring

decisions, training, conducting performance reviews, working with Human Resources

("HR") on performance management, approving time cards and expense reports,

approving overtime, and ensuring service calls were assigned to FEs efficiently.[10]  *Id.* at

---

Brimmer, § III.F.3.b.iv.  Accordingly, the Court deems this fact admitted for the purposes of the motion for summary judgment.

[8] Defendant states that plaintiff "managed" 20-42 FEs.  Docket No. 59 at 6, ¶ 13. Plaintiff's response disputes the use of the term "manage," but states that between 20-42 FEs would escalate calls to plaintiff.  Docket No. 70 at 7, ¶ 13.  Defendant's reply argues that this is a misleadingly narrow definition of plaintiff's duties to the 20-42 FEs. Docket No. 72 at 4, ¶ 13.  Plaintiff's supplemental response states that plaintiff had "administrative oversight" of 19 FEs.  Docket No. 73 at 12, ¶ 13.  The cited portion of the deposition states "Q. . . . If this document is correct and Mr. Kelly was only supervising 19 at the time, was there a change somewhere along the time line between supervising 19 and supervising 45?  A. There very well could have been.  And it looks like if there was a change, whatever that change is, I don't know."  Docket No. 73-1 at 30, 123:14-21.  The Court therefore finds it undisputed that plaintiff supervised between 20-42 FEs; whether or not the lower end of the spectrum was 19 or 20 is immaterial.

[9] The parties dispute whether plaintiff "conducted weekly meetings" in which this discussion of work matters happened.  Docket No. 70 at 10, ¶ 18.

[10] Plaintiff attempts to dispute this fact by saying he had "limited authority" and needed to obtain approval from various managers.  Docket No. 70 at 8-9, ¶ 14.  This does not create a genuine dispute.

6, ¶ 14.  It was extremely rare for plaintiff's supervisor to ever engage in customer service or field management.  *Id.*  Plaintiff was responsible for managing and directing the work of the FEs.[11]  *Id.*

Plaintiff selected the candidates to interview from a recruiter's initial screening and conducted interviews of FE candidates.  *Id.* at 7, ¶ 20.  If the position was not local, plaintiff selected a senior or team leader FE from his territory to interview the candidate and provide plaintiff with "managerial" input.  *Id.*  Plaintiff was the most senior person to interview candidates for a "backfill or headcount add."  *Id.*  Plaintiff's manager did not conduct interviews for these positions.[12]  *Id.*  Plaintiff selected which candidate to make

---

[11] Plaintiff disputes that he managed the workflow of FEs and states that service delivery coordinators controlled the workflow.  Docket No. 73 at 14, ¶ 14.  In order to support his dispute, plaintiff cites Mr. Mescher's deposition where Mr. Mescher stated that he has three direct reports who are service delivery coordinators who "coordinate calls for a specific account."  *Id.* (citing Docket No. 73-1 at 20, 60:8-16).  This testimony does not state that the service delivery coordinators, not CSMs, managed the FE workflow.  Because the deposition testimony of Mr. Mescher does not support plaintiff's statement that service delivery coordinators managed FE workflow, it is therefore undisputed that plaintiff managed and directed FE workflow.  Additionally, defendant's motion for summary judgment cites plaintiff's deposition testimony that "[t]he managerial responsibilities were to make sure that the dispatchers were assigning calls efficiently.  They weren't my people to -- I could go to their manager and say, 'Your service coordinator isn't doing their job as far as call assignments,' because I need to get my numbers down.  And then they would tell their service coordinator to work with me, and that's where my monitoring came in to make sure calls were assigned efficiently so that SLAs were met, all calls were closed.  And that was me driving those statistics down."  Docket No. 59 at 6, ¶ 14 (citing Docket No. 59-2 at 87, 153:12-22).

[12] Plaintiff purports to deny this fact by stating that senior managers also interviewed candidates.  Docket No. 70 at 11, ¶ 20.  He cites his own testimony that his supervisors interviewed candidates when defendant acquired new companies.  *Id.*  However, immediately following this testimony, plaintiff testified that interviewing when defendant acquired new companies was treated differently than hiring "an additional headcount" and that "on a backfill or head count add[ ] I don't recall Jeff or Ken interviewing the candidates that the recruiter was presenting to me."  Docket No. 59-2 at 47, 90:1-21.  Plaintiff's citation to the deposition therefore does not support his statement that senior managers interviewed candidates for "backfill or headcount add" positions and is

an offer to when there was more than one candidate for a position.[13]  *Id.*, ¶ 21.  If the

candidate asked to be paid above the range for the position and plaintiff felt it was

justified, plaintiff requested a higher pay rate; plaintiff's manager approved these

requests approximately half of the time.  *Id.*

Plaintiff trained new hires, and when Unisys acquired a new line of business, he

and several other CSMs trained around 30 incoming managers on Unisys contracts,

tools, and operations.  *Id.* at 6, 8, ¶¶ 14, 25.  Plaintiff wrote reports containing his ratings

of individual FEs.  *Id.* at 8, ¶ 28.  It was plaintiff's job to determine when an FE's

termination was necessary based on performance.[14]  *Id.* at 9, ¶ 33.  Plaintiff sought final

approval from HR for termination.  *Id.*

---

insufficient to create a genuine dispute.  Plaintiff's supplemental response states that
there is a "clear dispute" about plaintiff's hiring authority, but does not cite any evidence
in support.  Docket No. 73 at 17-18, ¶ 20.  This statement is therefore insufficient to
create a genuine dispute.

[13] Plaintiff appears to argue that this is disputed by citing to his response to defendant's
Statement of Undisputed Material Fact ("SUMF") ¶ 20.  Docket No. 70 at 11, ¶ 21.
However, plaintiff's response to ¶ 20 does not cite any testimony showing that plaintiff
did not have hiring authority.  *Id.*, ¶ 20.  Instead, plaintiff's response cites plaintiff's
testimony that, "[i]f I had very few candidates, which was frequent, I would basically
present [to the recruiter] why I didn't like that person and why I wanted to wait for other
resumes."  *Id.*  Plaintiff's supplemental response to ¶ 8, where plaintiff states that he did
not have unilateral hiring authority because he could not increase the number of
employees, Docket No. 73 at 10, ¶ 8, does not create a genuine dispute of material fact.
Plaintiff selected the person who would be given the job when there was a position to be
filled.

[14] Plaintiff does not respond to this statement or any of the other statements in ¶¶ 30-39
of defendant's motion for summary judgment.  Fed. R. Civ. P. 56(e)(2) states that, "[i]f a
party fails to . . . properly address another party's assertion of fact . . . , the court
may . . . consider that fact undisputed for the purposes of the motion."  Fed. R. Civ. P.
56(e)(2).  Under the Practice Standards of this Court, a party opposing a motion
for summary judgment
      shall, in a section of the brief required by rule 56.1(a) of the United States
      District Court for the District of Colorado Local Rules of Practice (Civil)

During plaintiff's tenure as a CSM, five FEs that reported to him were terminated based on performance.  *Id.*, ¶ 34.  Plaintiff requested, and HR approved, each of those five terminations.  *Id.*  There were only two occasions when HR did not approve plaintiff's termination request.  *Id.*  Plaintiff personally delivered the terminations.  *Id.*, ¶ 35.  Unisys periodically conducted reductions in force during plaintiff's tenure as a CSM and directed Plaintiff to identify one or more FEs for layoff.  *Id.*, ¶ 36.  Of approximately a dozen reductions in headcount during plaintiff's tenure as a CSM, plaintiff made the decision of which individual to lay off approximately ten times.  *Id.*

Plaintiff decided whether a performance improvement plan ("PIP") or corrective action plan ("CAP") was necessary."  *Id.*, ¶ 30.  Plaintiff then submitted documentation explaining the justification to HR.  *Id.*  Plaintiff also handled coaching of employees when he determined it was appropriate.  *Id.*  Plaintiff prepared about 20 PIPs and between five and ten CAPs as a CSM.  *Id.*, ¶ 31.

He testified that over the course of seven years, Unisys directed him to lay off a particular FE only twice, and both times the selected employee was already on a PIP or a CAP or was not meeting plaintiff's Performance Metrics and Separation.  *Id.*, ¶ 34. Plaintiff's overall performance as a CSM was based on the aggregate performance of

---

styled "Response to Statement of Undisputed Material Facts," admit or deny the asserted material facts set forth by the movant. . . .  Any denial shall be accompanied by a **brief** factual explanation of the reason(s) for the denial and a **specific reference** to material in the record supporting the denial.

Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.3.b.iv.  The "[f]ailure to follow these procedures . . . may cause the Court to deem certain facts as admitted."  *Id.* at § III.F.3.b.ix.  Accordingly, the Court deems these facts admitted for the purposes of the motion for summary judgment.

the FEs in his territory.  *Id.* at 10, ¶ 37.  On March 28, 2019, Plaintiff was laid off from his

CSM position with Unisys as part of a workforce reduction.  *Id.*, ¶ 39.

## II.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when

the "movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if

under the relevant substantive law it is essential to proper disposition of the claim.

*Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes

over material facts can create a genuine issue for trial and preclude summary judgment.

*Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is

"genuine" if the evidence is such that it might lead a reasonable jury to return a verdict

for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial,

it may satisfy its burden at the summary judgment stage by identifying a lack of

evidence for the nonmovant on an essential element of the nonmovant's claim."

*Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal

quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671

(10th Cir. 1998)).  "Once the moving party meets this burden, the burden shifts to the

nonmoving party to demonstrate a genuine issue for trial on a material matter."

*Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir.

1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but

instead must designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).

"To avoid summary judgment, the nonmovant must establish, at a minimum, an

inference of the presence of each element essential to the case." *Bausman*, 252 F.3d

at 1115.  When reviewing a motion for summary judgment, a court must view the

evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

Under the FLSA, an employer must pay an employee overtime compensation at

a rate not less than one and one-half times the employee's regular rate of employment

for all hours that the employee works in a given work week above 40 hours.  29 U.S.C.

§ 207(a)(1) (the "overtime requirement").  The FLSA includes a number of exemptions

to the overtime requirement.  Defendant claims that plaintiff is exempt from the overtime

requirement under both the executive and administrative exemptions.  Docket No. 59 at

2.

### A. The Executive Employee Exemption

The "executive exemption" applies to "any employee employed in a bona

fide executive . . . capacity."  29 U.S.C. § 213(a)(1).  An "executive employee" is one

who is:

> (1) Compensated on a salary basis pursuant to § 541.600 at a rate of not less
> than $455[15] per week . . . , exclusive of board, lodging or other facilities;
> (2) Whose primary duty is management of the enterprise in which the employee
> is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other
> employees; and

---

[15] The salary threshold increased from $455 per week to $684 per week on January 1,
2020.  Defining and Delimiting the Exemptions for Executive, Administrative,
Professional, Outside Sales and Computer Employees, 84 Fed. Reg. 51230-01, 51230,
51306 (Sept. 27, 2019).  Plaintiff was no longer employed by defendant when this
change was made.  Docket No. 59 at 11 n.1.

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 CFR § 541.100(a).  The employee bears the burden of proving that the employer is violating the FLSA.  *Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1233 (10th Cir. 2008).  An employer who asserts that the employee is exempt because he falls within the executive or administrative exception bears the burden of establishing that such category applies.  *Id.*  In *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018), the Supreme Court altered the long-standing practice of interpreting FLSA exemptions narrowly.  Instead, the Court held that exemptions should be given a "fair (rather than a 'narrow') interpretation."  *Id.*  However, this holding did not change the fact that it is the employer's burden to establish that an exception to the FLSA applies.  *See Wilson v. Schlumberger Tech. Corp.*, No. 17-cv-00281-RBJ, 2019 WL 1916200, *2 (D. Colo. Apr. 24, 2019) (acknowledging that "the employer's burden is somewhat relaxed" following *Encino*, but affirming that the employer still "bears the burden to prove that plaintiffs fall within the [ ] exemption").

### 1.  *Salary Rate*

Plaintiff concedes that he meets the salary threshold for the executive exemption. Docket No. 70 at 14 n.1.

### 2.  *Primary Duty*

An "executive" employee's "primary duty" must be "management" of a department or subdivision of the business.  29 C.F.R. § 541.100(a)(2).  In determining an employee's "primary duty," the focus is on the "principal, main, major, or most important duty that the employee performs," examined in light of the job as a whole.  *Id.*

at § 541.700(a).  The inquiry is fact-intensive, examining not only the relative amount of time the employee spends performing each duty, but also the employee's freedom from direct supervision, the employee's pay relative to others performing similar non-exempt work, the extent to which the employee himself chooses when to perform the non-exempt work, and the extent to which the employee is held responsible for the success or failure of the operation.  *Id.* at § 541.700(a), (b); *id.* at § 541.106(a).

"In FLSA cases, a court must first determine the employee's primary duty, and then determine whether that primary duty disqualifies the employee from FLSA's protections."  *Maestas v. Day & Zimmerman, LLC,* 664 F.3d 822, 827 (10th Cir. 2012) (citation omitted).  "Time spent performing each duty is a 'useful guide' in examining which duty is primary, but there is no requirement that an exempt executive employee spend more than half h[is] time on managerial tasks."  *Id.* (citing 29 C.F.R. § 541.700(b)).  "Thus, for example, if an employee spends 40 percent of h[is] time performing managerial work and 60 percent on non-managerial work, the employee's managerial work may still be considered h[is] 'primary duty' if []he enjoys a significant degree of independence and is paid a substantial premium for h[is] non-managerial work."  *Id.*  "Because the primary duty inquiry presents a question of fact, summary judgment is proper only if there [is] no genuine dispute regarding [plaintiff's] primary duties."  *Id.* at 828; *see also Dep't of Labor v. City of Sapulpa,* 30 F.3d 1285, 1287 (10th Cir. 1994) ("A fact-sensitive inquiry is necessary" to determine which duty is primary). "The regulations also require consideration of 'the relative importance of the exempt duties as compared with other types of duties; . . . the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages

12

paid to other employees for the kind of nonexempt work performed by the employee.'"
*Maestas*, 664 F.3d at 827 (quoting § 541.700(a)).

The Court must first decide whether there is a genuine dispute over what
plaintiff's primary duty was.  Defendant argues that plaintiff's primary duty was to
supervise and manage the work of FEs who reported to him.  Docket No. 59 at 14.
Plaintiff responds that genuine disputes of material fact exist as to (1) the amount of
time plaintiff spent on escalations, resolving calls for which FEs were unavailable, or
otherwise dealing with technical aspects of his job; (2) the level of freedom from
supervision plaintiff enjoyed; and (3) the pay difference between CSMs and FEs.
Docket No. 70 at 16.  In determining plaintiff's primary duty, the Court is to consider "the
amount of time devoted to each task, the relative importance of each task, the degree of
freedom from direct supervision, and the pay relative to subordinates."  *Maestas*, 664
F.3d at 829 (citing 29 C.F.R. § 541.700).  The Court may only grant summary judgment
if all reasonable fact finders would conclude that the managerial portions of plaintiff's job
are his "primary duties."  *Id.*

The undisputed facts do not include a breakdown of the average time plaintiff
spent on various tasks in a day or plaintiff's pay relative to subordinates.  The Court
must base its determination on all the facts in the case, "with the major emphasis on the
character of the employee's job as a whole."  29 C.F.R. § 541.700(a).  As a whole,
plaintiff's job entailed interviewing and training new FEs, Docket No. 59 at 6, 7, ¶¶ 14,
20; documenting FE performance issues, *id.*; training new managers coming to Unisys
from Hewlett Packard Enterprises when Unisys acquired a new line of business, *id.* at 8,
¶ 25; rating FEs on a semi-annual basis, *id.*, ¶ 28; handling employee grievances and

complaints, *id.* at 6, ¶ 17; determining when an FE termination was necessary, though final approval from HR was required, *id.* at 9, ¶ 33; evaluating FEs to be laid off in a reduction of force, *id.*, ¶ 36; deciding whether a PIP or CAP was necessary, *id.*, ¶ 30; managing and directing the work of FEs, *id.* at 6, ¶ 14; and ensuring service calls were assigned to FEs efficiently. [16]  *Id.*  From these facts, the Court concludes that plaintiff's primary duty is the management and direction of the FEs in his region.  *See Parish v. Roosevelt Cnty. Bd. of Cnty. Comm'rs*, 2017 WL 6759103, at *18 (D.N.M. Dec. 31, 2017) (finding plaintiff's primary duty to be management of detention center based on review of plaintiff's job as a whole).  Running the geographic region for which plaintiff was responsible was more important than other duties plaintiff performed.  *See* 29 C.F.R. § 541.700(a) ("Factors to consider when determining the primary duty of an employee include . . . the relative importance of the exempt duties as compared with other types of duties.").  Although plaintiff took orders from his supervisors, it was extremely rare for plaintiff's supervisor to ever engage in customer service or field

---

[16] Defendant offers statements from plaintiff's LinkedIn profile and resume as undisputed facts relating to plaintiff's actual job duties.  Docket No. 59 at 5, ¶¶ 11-12. While these statements may be admissible at trial, the Court does not find them persuasive or helpful for purposes of determining what plaintiff's job duties actually were.  *See Schaefer v. Ind. Mich. Power Co.*, 358 F.3d 394, 400 (6th Cir. 2004) ("We focus on evidence regarding the actual day-to-day activities of the employee rather than more general job descriptions contained in resumes, position descriptions, and performance evaluations") (citation omitted); *see also Morrison v. Ocean State Jobbers, Inc.*, 290 F.R.D. 347, 362 n.10 (D. Conn. 2013) (declining to use plaintiffs' resumes to discredit their deposition testimony because "[i]t is unsurprising that an employee would choose to emphasize in a resume managerial tasks, such as hiring or training new employees, over non-managerial tasks, such as cleaning the bathrooms or bringing in carriages, even where the managerial tasks took up significantly less of the employee's time"); *Knight v. Valley Country Club*, No. 14-cv-02470-PAB-MJW, 2015 WL 7014371, at *2 (D. Colo. Nov. 12, 2015) ("At most, defendants have made the unremarkable observation that plaintiff emphasized certain of her duties in documents analogous to a professional resume, which is minimally relevant to whether plaintiff's 'primary duty' was managerial or related to VCC's general business operations.").

management, Docket No. 59 at 6, ¶ 14, indicating that he enjoyed some freedom from supervision.  *See Maestas*, 664 F.3d at 831 ("Although May takes orders from upper management, he is the highest-ranking official in the field whenever he works and thus enjoys a greater degree of independence and discretion than the subordinate officers."). Therefore, the Court determines that there is no genuine dispute of material fact that plaintiff's primary duty was managing and directing the work of FEs in his region.  The Court turns to whether any genuine dispute exists regarding whether this duty is "management."

"Management" includes tasks such as interviewing, selecting, and training employees; setting and adjusting rates of pay and hours of work; directing the work of employees; appraising employee performance; and imposing discipline. [17]  *Id.* at §§ 541.100(a)(4), 541.102.  Plaintiff's primary duty of managing and directing the work of FEs in his region clearly meets the definition of management.  *See id.* at § 541.102 ("'[M]anagement' includes, but is not limited to, . . . directing the work of employees.").

---

[17] Section 541.102 states that management
> includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

Plaintiff's argument is based on his assertion that handling escalations was plaintiff's primary duty and was technical, rather than managerial.  Docket No. 70 at 16.  Even assuming that plaintiff spent most of his time handling escalations, the Court still finds that plaintiff's primary duty was managerial.  Within his territory, plaintiff was responsible for handling and resolving all "escalations."  Docket No. 59 at 6, ¶ 16.  An escalation is an issue that arises when an FE conducts a service call, such as from an unsatisfied customer or about a missed SLA.  *Id.*  Plaintiff states that "[m]any of the escalations handled by Mr. Kelley related to the problem-solving of complex hardware and software computer issues."  Docket No. 70 at 1.  However, plaintiff cites no support for this statement.  *See id.*  Plaintiff claims that he responded to service tickets and talked with Unisys clients "many times during the day" and cites his denial of a portion of defendant's SUMF ¶ 9.  *Id.* at 16.  However, the evidence cited in plaintiff's response to SUMF ¶ 9 does not support this statement[18] and therefore does not create a genuine dispute that plaintiff's involvement in escalations was managerial.

Plaintiff further argues in his supplemental response that his role in handling escalations was technical by citing the following testimony from Mr. Mescher: "Q.  Well, the CSMs in that unit was charged with performing service 24 hours a day?  A.  Yes.  As technicians, yes."  Docket No. 73 at 7, ¶ 5 (citing Docket No. 73-1 at 34, 130:8-10).  However, the testimony immediately thereafter states: "Q.  Technicians were charged with performing the work 24 hours a day, correct?  A.  Correct."  Docket No. 73-1 at 34,

---

[18] As noted above, plaintiff does not create a genuine dispute over whether plaintiff handled technical fixes over the phone a few times a month.  *See supra* note 6.  Plaintiff further attempts to argue that he frequently talked with clients by citing Mr. Mescher's deposition at Docket No. 73-1 at 38, 141:10-22.  Docket No. 73 at 11, ¶ 9.  The cited deposition testimony states that in a "small number of instances" the client would call the CSM directly.  Docket No. 73-1 at 38, 142:4-13.

130:11-13.  This testimony does not provide any indication that the CSM role in handling escalations was technical.

Plaintiff's supplemental response to SUMF ¶ 5 cites Mr. Mescher's testimony regarding the day-to-day role of the CSM: "[t]hey supervise and manage their field technicians on a daily basis, the calls that to be [sic] taken on a daily basis and take calls that particular day.  Sometimes they prioritize certain calls over other calls, based on the severity of them."  Docket No. 73 at 7, ¶ 5 (citing Docket No. 73-1 at 36, 133:1-7).  This testimony does not create any genuine dispute of material fact regarding plaintiff's role in escalations; the undisputed facts show that it was managerial.

The undisputed facts support that plaintiff's primary duty was managing and directing the FEs in his territory.  However, to meet the executive exemption to the FLSA, plaintiff's primary duty must have been management "of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof."  29 C.F.R. § 541.100(a)(3).  A "customarily recognized department or subdivision"

> is intended to distinguish between a mere collection of employees assigned from time to time to a specific job or series of jobs and a unit with permanent status and function.  A customarily recognized department or subdivision must have a permanent status and a continuing function.  For example, a large employer's human resources department might have subdivisions for labor relations, pensions and other benefits, equal employment opportunity, and personnel management, each of which has a permanent status and function.

29 C.F.R. § 541.103(a).  Plaintiff was in the United States and Canada Field Services Organization ("USCFSO") and had an assigned geographic area for which he was responsible.  Docket No. 59 at 4, ¶¶ 6-7.  There is no dispute that plaintiff's subdivision of the USCFSO was of a permanent status and continuing function.  Therefore, the

17

Court finds that the undisputed facts show that plaintiff's primary duty was the management of a customarily recognized department or subdivision.

### 3. *Customarily and Regularly Directs the Work of Two or More Employees*

Plaintiff must have "customarily and regularly direct[ed] the work of two or more other employees" to meet the executive exemption.  29 CFR § 541.100(a)(3).  Plaintiff supervised between 20 and 42 FEs at any given time and managed and directed their work.  Docket No. 59 at 6, ¶¶ 13-14.  Under 29 C.F.R. § 541.104(c), "[a]n employee who merely assists the manager of a particular department and supervises two or more employees only in the actual manager's absence does not meet this requirement." However, the undisputed facts show that plaintiff was the supervisor of the FEs and was not merely assisting his supervisor.  Therefore, there is no genuine dispute that plaintiff customarily and regularly directed the work of two or more employees.

### 4. *Hiring and Firing Authority*

An executive employee must have "authority to hire or fire other employees or [their] suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight."  29 CFR § 541.100(a)(4).  In determining whether an employee's recommendations are given "particular weight," factors to be considered "include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon."  *Id.* at § 541.105.  An employee's

recommendation can be deemed to have "particular weight" even if the employee does not have the ultimate authority as to hiring and firing.  *Id.*

The undisputed facts show that plaintiff selected candidates to interview from a recruiter's initial screening, conducted interviews of FE candidates, and, if there was more than one candidate for a position, selected which candidate to make an offer to. Docket No. 59 at 7, ¶¶ 20-21.  Plaintiff determined when an FE's termination was necessary based on performance.  *Id.* at 9, ¶ 33.  Although plaintiff sought final approval from HR for termination, *id.*, plaintiff's recommendation was clearly given "particular weight."  Of the five FEs terminated on the basis of performance during plaintiff's tenure as a CSM, plaintiff requested, and HR approved, all five terminations.  *Id.*, ¶ 34.  There were only two occasions when HR did not approve plaintiff's termination request.  *Id.* Additionally, of approximately a dozen reductions in headcount during plaintiff's tenure as a CSM, plaintiff made the decision of which individual to lay off approximately ten times.  *Id.*, ¶ 36.  Even though plaintiff may not have had unilateral hiring or firing authority, the undisputed facts show that plaintiff's recommendations were given particular weight; plaintiff therefore meets this factor of the executive exemption.

Plaintiff's amended complaint brings one claim against defendant for violating the FLSA's overtime provisions.  Docket No. 48 at 6.  The Court has determined that there is no genuine dispute of material fact regarding whether plaintiff meets each criteria of the executive exemption to the FLSA.  Therefore, defendant has carried its burden to

show that plaintiff falls within the executive exemption to the FLSA, and the Court will grant defendant's motion for summary judgment.[19]

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 59] is **GRANTED**.  It is further

**ORDERED** that Plaintiff's Motion to Supplement His Opposition to Defendant's Motion for Summary Judgment and Supplemental Responses [Docket No. 73] is **GRANTED**.  It is further

**ORDERED** that this case is dismissed with prejudice.

DATED March 29, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[19] Because plaintiff falls within the executive exemption to the FLSA, the Court declines to consider whether plaintiff also meets the administrative exemption.